**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BUTTE DIVISION**

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, NATIVE ECOSYSTEMS COUNCIL, COUNCIL ON WILDLIFE AND FISH, and GALLATIN WILDLIFE ASSOCIATION,<br><br>Plaintiffs,<br><br>vs.<br><br>MATTHEW JEDRA, in his official capacity as Forest Supervisor for the Custer Gallatin National Forest; AMY HAAS, in her official capacity as Beartooth District Ranger; UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture; & U.S. FISH AND WILDLIFE SERVICE, an agency of the U.S. Department of the Interior,<br><br>Defendants. | CV 26-51-BU-WWM<br><br>ORDER DENYING PRELIMINARY INJUNCTION |

Before the Court is Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction filed on June 30, 2026. (Doc. 10). Plaintiffs seek to enjoin the United States Forest Service ("Forest Service"), the U.S. Fish & Wildlife Service ("FWS"), Matthew Jedra, in his official capacity as Forest Supervisor for the Custer Gallatin National Forest, and Amy Haas, in her official capacity as Beartooth District Ranger (collectively, "Defendants") from beginning or

continuing any road maintenance on Forest Service Roads 2141 and 21415. (*Id.*).

On July 1st, Defendants filed a Notice of Suspension of Work in which they

notified the Court that they "suspended all road maintenance work associated with

Forest Service roads 2141 and 21415 for 30 days to allow the parties to brief and

the Court to decide Plaintiffs' Motion." (Doc. 14 at 2). The parties agreed that a

temporary restraining order was no longer necessary, and they have fully-briefed

the question of whether a preliminary injunction should issue. (*Id.*). Accordingly,

the Court conducted a hearing on the Motion on July 28th.

For the following reasons, the Court declines to order injunctive relief.

## I.    Factual Background

On April 3, 2026, the Forest Service approved the Burnt Mountain Project,

which authorized logging, burning, and temporary road building on 1,386 acres of

National Forest land in the Nichols, Willow, and West Fork Rock Creek

watersheds immediately west of Red Lodge, Montana, and the Red Lodge Creek

watershed south of Luther on the Beartooth Ranger District of the Custer Gallatin

National Forest. (Doc. 6 at 2). The Burnt Mountain Project is a fuels reduction

project designed to protect the nearby community of Red Lodge and to improve

forest resilience to insects, disease, fire, and drought. (Doc. 8-1 at 5). It will treat

the project area "through a combination of commercial harvest, non-commercial

mechanical fuels treatments, non-commercial hand treatments, and prescribed

2

fires." (Doc. 8-6 at 2). The project area contains habitat for three federally-listed threatened species—grizzly bear, Canada lynx, and wolverine—as well as a designated lynx critical habitat. (Doc. 8 at 9; Doc. 8-3; Doc. 8-4).

The same day that the Burnt Mountain Project was approved, the Forest Service approved the Red Lodge Mountain Fuels Project ("RLM Project") and announced the decision in a single letter. (Doc. 8-6). The RLM Project authorized logging, burning, and temporary road building on 1,822 acres in the Nichols, Willow, and West Fork Rock Creek watersheds. (Doc. 6 at 2). The Burnt Mountain Project and the RLM Project are to be implemented through the same timber sale and share overlapping treatment units and road systems. (Doc. 8-7 at 9; Doc. 8-1 at 38; Doc. 8-2 at 47).

The Forest Service determined that both the Burnt Mountain Project and the RLM Project qualified as "hazardous fuels reduction" projects under the Healthy Forests Restoration Act ("HFRA"), categorically excluding each project from further review under the National Environmental Policy Act ("NEPA"). (Doc. 8 at 10; Doc. 8-1 at 3; Doc. 8-2 at 3). The Forest Service issued a Finding of Applicability and No Extraordinary Circumstances ("FANEC") for each project, in which it concluded that the projects' effects on the environment were certain (Doc. 8-1 at 22–25; Doc. 8-2 at 18–21) and that no extraordinary circumstances existed (Doc. 8-1 at 27; Doc. 8-2 at 22). These conclusions relied upon the Forest

Service's consultation with FWS that the projects were "not likely to adversely affect" grizzly bears based upon the agencies' calculations of grizzly bear secure habitat, using a minimum patch size of 10 acres. (Doc. 8-3 at 2, 32, 36; Doc. 8-4 at 2, 29, 65).

The FANEC issued in connection to the Burnt Mountain Project states that "[t]here is no road maintenance proposed for the Burnt Mountain Project." (Doc. 8-1 at 12). Rather, it discloses that 5.3 miles of temporary roads will be built which will be "constructed using minimum standards necessary to accommodate safe log truck haul," and that the temporary roads will be "rehabilitated" within three years. (*Id.*). However, existing Forest Service Roads 2141 and 21415 run through the zones designated for the Burnt Mountain Project. (Doc. 17-4 at 20).

In 2008, Road 21415 was identified as the "best existing route" for the Montana Department of Natural Resources and Conservation to access 5,610 acres of state land in the Red Lodge Creek area. (Doc. 17-1 at 5–9). Accordingly, the 2008 Beartooth Travel Management Record of Decision ("2008 Beartooth ROD") converted the road into a system route for administrative use and determined that the decision would not substantially affect grizzly bear secure habitat. (*Id.*; Doc. 17-2 at 207–08) ("cumulative effects of past, present, and reasonably foreseeable future actions is expected to be small.").

4

Road maintenance occurs as funds become available and are disbursed based on work priorities. (Doc. 17-4 at 4–5). On July 25, 2025, Defendant Haas authored an internal memorandum for the Forest Service to assess proposed maintenance to Road 21415. (Doc. 8-9). The memorandum stated, "The Custer Gallatin National Forest appointed an interdisciplinary team of resource specialists to review the proposed Forest Service Road 21415 maintenance. The team determined there were no adverse or extraordinary circumstances that warranted further analysis in an environmental assessment or an environmental impact statement." (*Id.* at 2). Specifically, the team considered whether there were extraordinary circumstances related to the federally listed threatened species— grizzly bear, wolverine, Canada lynx, monarch butterfly, and Suckey's cuckoo bumblebee—and found the road maintenance "not likely to adversely affect" any of the species or related secure habitats. (*Id.* at 3–4). Consequently, the Forest Service authorized road maintenance to Road 21415. (*Id.* at 7).

With respect to Road 2141, the 2008 Beartooth ROD designated it as a system road open to highway vehicles for public use. (Doc. 17-4 at 7). Carbon County has an easement allowing the initial construction of 2141 and regular maintenance. (Doc. 8-10 at 31). The Forest Service "has traditionally performed periodic routine maintenance on Road 2141 based on priority, funding and need." (Doc. 17-4 at 7). Maintenance was done on Road 2141 in 2009, 2012, 2014, and

2024. (*Id.*). On June 11, 2026, Carbon County signed a Letter of Consent that authorized the Forest Service to "perform road maintenance activities" on 2141. (Doc. 8-10 at 30). The purpose of this maintenance is to "address health and safety concerns," which will "contribute to continued long term service and ingress/egress for all public and private road users," and "benefit ecological resources." (Doc. 17-4 at 7–8). Although this portion of the roadway has only carried infrequent passenger vehicles (Doc. 8-10), the Forest Service has designated this segment of 2141 as the haul route for timber harvested from the Burnt Mountain Project and indicated that road widening would occur "where appropriate." (Doc. 8-11; Doc. 8-7 at 4).

## II.    Procedural Posture of the Case

Plaintiffs initially filed a Complaint against Defendants on May 18, 2026, and filed an Amended Complaint on June 30, 2026. (Docs. 1, 6). The Amended Complaint contains five causes of action: (1) "The Forest Service's segmentation of the Burnt Mountain and RLM Projects violates HFRA, NEPA, and the Administrative Procedure Act ("APA");" (2) "[FWS's] failure to rely on the best available science and consider important factors violates the Endangered Species Act ("ESA") and APA;" (3) "FWS's failure to conduct a site-specific analysis of the Burnt Mountain Project's environmental baseline, effects, cumulative effects, and/or provide a no-jeopardy determination for whitebark pine violates the ESA

6

and APA;" (4) "The Forest Service lacks a rational basis to conclude that no extraordinary circumstances exist for both Projects in violation of HFRA, NEPA, and the APA;" and (5) "The Forest Service's failure to demonstrate compliance with the Northern Rockies Lynx Management Direction ("NRLMD") violates NFMA, HFRA, and the APA." (Doc. 6 at 42–51). Within Count IV of the Amended Complaint, Plaintiffs allege that "[b]ecause the Forest Service never coherently explains the relationship between [the road maintenance required] to implement the Burnt Mountain Project, it lacked a rational basis to conclude that the Project's environmental effects were fully understood, certain, and insignificant." (*Id.* at 50).

On June 30th, Plaintiffs filed a motion for injunctive relief seeking to enjoin Defendants from beginning or furthering any road work planned for Roads 2141 and 21415. (Doc. 10). Plaintiffs assert that they are likely to prevail on the merits of their HFRA and NEPA claim in Count IV because "Defendants fail to disclose and analyze the full scope of road work necessary to implement the Burnt Mountain Project and the environmental impacts of that work" and that the Forest Service "arbitrarily concluded that the Project's effects on grizzly bear are certain insignificant." (Doc. 8 at 5–6). Plaintiffs additionally argue that they are likely to succeed on the merits of their ESA claim because "Fish & Wildlife Service failed to rely on the best available science in applying a definition of grizzly bear secure

7

habitat." (*Id.*). Furthermore, Plaintiffs assert that maintenance on Roads 2141 and 21415 will cause irreparable harm to Plaintiffs' members interests and to grizzly bears. (*Id.* at 6). Lastly, Plaintiffs claim that the balance of the equities and public interest "support protection of the property owners, federally-listed species, and other persons with cognizable interests in the Upper Red Lodge Creek area." (*Id.*).

Defendants oppose the preliminary injunction and argue that Plaintiffs have not established a likelihood of success on the merits, will not suffer irreparable harm, and that the balance of equities and public interest tips in Defendants' favor. (Doc. 17). Defendants maintain that although road maintenance on Roads 2141 and 21415 is a prerequisite to the project, it was considered and authorized in 2008 and, therefore, does not need to be considered as part of the project. (*Id.* at 11). To the extent that Plaintiffs challenge the Forest Service's decision to convert Road 21415 to administrative use in 2008, Defendants argue that claim is barred by the statute of limitations. (*Id.* at 20). Moreover, Defendants argue that the Forest Service complied with NEPA and HFRA by authorizing the project under a categorical exclusion and that FWS considered the best available science and complied with the ESA when it assessed potential effects to grizzly bears. (*Id.*). Defendants additionally argue that Plaintiffs have failed to demonstrate the likelihood of irreparable harm given that the roads already exist. (*Id.* at 32). Lastly, Defendants argue that "Plaintiffs' speculative alleged harms are strongly

outweighed by the public interest in performing this road maintenance for multiple uses—including implementation of the Burnt Mountain Project." (*Id.* at 11–12).

## III.   Legal Standard

A party seeking a preliminary injunction must demonstrate: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) injunctive relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit has adopted the "'serious questions' test—a 'sliding scale' variant of the *Winter* test—under which a party is entitled to a preliminary injunction if it demonstrates (1) 'serious questions going to the merits,' (2) 'a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the plaintiff,' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizens Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). The party seeking an injunction bears the burden of proving all four *Winter* elements in order to secure an injunction. *See Cottrell*, 632 F.3d at 1135.

"A preliminary injunction is an extraordinary remedy never awarded as a right." *Winter*, 555 U.S. at 24. In each case, the Court must balance the competing claims of injury and consider the effect that granting or withholding the requested

relief will have on each party. *Id.* "It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should *not* issue; rather, a court must determine that an injunction *should* issue under the traditional four-factor test set out above." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010).

## IV.   Discussion

As an initial matter, Plaintiffs' claims are not barred by the statute of limitations. However, Plaintiffs have not demonstrated that maintenance to be undertaken by Defendants on Roads 2141 and 21415 is likely to cause irreparable harm or that the public interest or balance of the equities tip in their favor.

### a.   Claims Not Barred by the Statute of Limitations

Defendants argue that Plaintiffs' claim regarding the administrative use of Road 21415 fails in part because of APA's six-year statute of limitations. (Doc. 17 at 20). Defendants reason that because Road 21415 was designated for administrative use in the 2008 Beartooth ROD, Plaintiffs' cause of action accrued in 2008. (*Id.*). Thus, pursuant to 28 U.S.C. § 2401(a), the government asserts that Plaintiffs needed to bring their claim pertaining to road maintenance within six years.

However, Plaintiffs do not challenge the 2008 Beartooth ROD. Rather, Plaintiffs claim that the Forest Service could not approve the Burnt Mountain

Project under a categorical exclusion while omitting the road work proposed on both Roads 2141 and 21415. (Doc. 19 at 4–5). In other words, Plaintiffs do not challenge the designation of Road 21415 for administrative use; they challenge the implementation of road maintenance as it applies to the Burnt Mountain Project. Accordingly, the right of action accrued when the Burnt Mountain Project was approved in April 2026. Plaintiffs' claims are not barred by the statute of limitations.

> b.      *Plaintiffs Are Not Likely to Suffer Irreparable Harm*

In *Winter*, the Supreme Court emphasized that irreparable injury must be likely in the absence of an injunction, not merely possible. 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* The Court must also determine whether the preliminary injunction is required to prevent harm likely to occur *before* it can decide the case on the merits. *Id.* (emphasis added).

Although "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable," this does not mean that "any potential environmental injury warrants an injunction." *Cottrell*, 632 F.3d at 1135 (internal citations omitted)

(cleaned up). A moving party must still show actual and irreparable injury. *Id.* There is no "rule that any potential environmental injury automatically merits an injunction." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010).

Plaintiffs argue that Defendants' planned work on Roads 2141 and 21415 will cause irreparable harm to: (1) the property interests of Plaintiffs' members who own adjacent land; (2) recreational, aesthetic, educational, scientific, and spiritual interests of Plaintiffs' members; and (3) grizzly bears in the area. (Doc. 8 at 29–33).

### i. Property, Recreational, Aesthetic, Educational, Scientific, and Spiritual Interests

First, Plaintiffs argue that the proposed road maintenance will harm the adjacent landowners' property interests. (*Id.* at 29). Road 2141 is immediately adjacent to property owned by Plaintiffs' members Dr. Black and Mr. Dokken. (*Id.* at 29). Dr. Black and Mr. Dokken "intentionally chose and developed their property because of its quiet setting, intact forest, abundant wildlife, and recreational opportunities." (*Id.*). The reconstruction of Road 2141 would "permanently alter the character of the landscape surrounding their home and substantially increase traffic, noise, and human disturbance," which they report would cause the couple to avoid using the property for years. (*Id.* at 30).

Similarly, Road 2141 runs through the northwest corner of Plaintiffs' member Henry and Barbara Dykema's 144-acre property, while Road 21415 abuts

12

the southern boundary of their property and crosses their irrigation ditch. (*Id.*). The Dykemas contend that the road work would irreparably burden their property through "increased traffic, noise, commercial activity, and fragmentation of surrounding landscape." (*Id.*). Plaintiffs contend that these injuries cannot later be repaired because if the road work is completed, "the character of the landscape surrounding Plaintiffs' homes will have been permanently altered." (*Id.*).

Second, Plaintiffs argue that the road maintenance will cause their members to suffer irreparable harm to their recreational, aesthetic, educational, scientific, and spiritual interests. (*Id.* at 31). Plaintiffs contend that their members have "longstanding and deeply personal relationships with the Burnt Mountain landscape that extend far beyond generalized interests in public lands." (*Id.*). Specifically, they "place high value on the area's intact forest ecosystem, riparian corridors, and ecosystemic processes that define the area and the Greater Yellowstone Ecosystem." (*Id.*). In addition to regularly hiking, skiing, and observing wildlife in the area, several of the members work professionally in landscape ecology, wildlife biology, and grizzly bear conservation. (*Id.* at 31–32). Richard Thayer and his family "raise cattle, hunt, fish, observe wildlife, maintain historic irrigation systems, study the area's geography and water infrastructure, and documents its history through maps, aerial photographs, and historical research." (*Id.* at 32).

13

Defendants counter that this argument fails because these roads already exist and Road 2141 currently allows vehicle traffic. (Doc. 17 at 32). Additionally, Defendants argue that Road 21415 is only open for administrative use and for limited duration, making irreparable harm unlikely. (*Id.* at 33). The Court agrees: there can be no finding of irreparable harm in the temporary restoration of pre-existing roads to a condition suitable for administrative use. Road 2141 is open to public use and has sustained maintenance several times over the past two decades. Plaintiffs have not demonstrated how the widening of Road 2141 might cause irreparable harm to the "character of the landscape" or otherwise affect their interests in light of its existing condition. Likewise, the current overgrown state of Road 21415 defeats the claim of permanence. These roads have naturally degraded, demonstrating that alleged prospective environmental injury caused by road maintenance is transient. Because the proposed changes to the landscape are non-permanent, they do not establish the irreparable harm required to justify the extraordinary remedy of a preliminary injunction.

### ii.   Grizzly Bears

"A reasonably certain threat of imminent harm to a protected species is sufficient for issuance of an injunction." *Marbled Murrelet v. Pac. Lumber Co.*, 83 F.3d 1060, 1066 (9th Cir. 1996). Proof of an "extinction-level threat" to a species is not required. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803,

14

818–19 (9th Cir. 2018).  Requiring so would be "contrary to the spirit of the [ESA], whose goal of preserving threatened and endangered species can also be achieved through incremental steps."  *Id.* at 819 (quoting *Nat'l Wildlife Fed'n v. Burlington N.R.R.*, 23 F.3d 1508, 1512 n.8 (9th Cir. 1994)).  Though there must be a sufficient causal connection between the alleged harm and the activity to be enjoined, a plaintiff need not demonstrate "that the action sought to be enjoined is the exclusive cause of the injury." *Nat'l Wildlife Fed'n*, 886 F.3d at 819.  Instead, it would be enough if Plaintiffs could show that "the requested injunction would forestall the irreparable harm." *Id.*

Plaintiffs contend that the maintenance to Roads 2141 and 21415 "will increase human access into occupied grizzly bear habitat, fragment security areas, and facilitate logging activities that further reduce habitat security and increase the risk of human-caused mortality." (Doc. 8 at 33).  Defendants counter that road maintenance will not impact or further fragment secure habitat because the roads already exist. (Doc. 17 at 34).  Furthermore, Defendants point out that the Forest Service considered grizzly bears and other ESA-listed species in approving the road maintenance for Road 21415 and determined that it was "not likely to adversely affect grizzly bears." (Doc. 17 at 21) (citing Doc. 8-9 at 4; Doc. 8-1 at 23–34).  Additionally, the Forest Service determined that the area surrounding Roads 2141 and 21415 is already non-secure habitat for grizzly bears with a high

rate of disturbance. (Doc. 17-6 at 35, 52). Because of the vast amount of secure habitat in adjacent areas and the temporary and minor nature of the disturbance, Defendants argue that the fear of harm to grizzly bears is "highly speculative and tied to distant forecasts about the Project." (*Id.* at 22, 34–35).

The Court finds that maintenance to Roads 2141 and 21415 will not cause irreparable harm to grizzly bears. As Defendants point out, these roads already exist and are considered non-secure habitat for grizzly bears. (*See* Doc. 17-6 at 52). Road 2141 is open to highway vehicles and has sustained maintenance several times over the past two decades. This fact demonstrates that Road 2141 is already non-secure habitat and allowing further maintenance, such as road widening in some areas, will not cause irreparable harm. Road 21415, though largely overgrown and unusable, is likewise not considered secure habitat for grizzly bears due to its categorization as a system route for administrative use. Plaintiffs point out that the roads will facilitate logging activity that will further reduce habitat security and increase the risk of human-caused mortality. However, that issue is not yet before the Court. Rather, the Court must only determine whether the activity Plaintiffs seeks to enjoin—road maintenance—will cause

16

irreparable harm. The Court finds that it will not. This conclusion is supported by the analyses done by the Forest Service and FWS's concurrence.[1]

### c.    Balance of Equities & Public Interest

When the government is a party, the analysis of the public interest and balancing of the equities merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). In weighing the equities, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted).

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* There is a "well-established 'public interest in preserving nature and avoiding irreparable environmental injury.'" *Cottrell*, 632 F.3d at 1138 (internal citations omitted). Suspending major federal projects until a careful consideration of environmental impacts occurs comports with the public interest.

---

[1] At the Forest Service's request, FWS reviewed and consulted with the Forest Service on the effects of the Burnt Mountain Project on federally listed and proposed threatened and endangered species. (Doc. 8-18). FWS considered the temporary and permanent roads that the project would utilize and determined that "[p]roject effects related to motorized access will be insignificant to grizzly bears." (*Id.* at 3–4).

17

*Id.* However, the Court must still consider whether there is a public interest that cuts in favor of not issuing an injunction. *Id.*

"The balance of hardships and the public interest tips heavily" in favor of preserving protected species. *Nat'l Wildlife Fed'n v. Burlington N. R.R.*, 23 F.3d 1508, 1511 (9th Cir. 1994). But this does not mean that "*any* potential environmental injury *automatically* merits an injunction." *Lands Council v. McNair*, 537 F.3d 981, 1005 (9th Cir. 2008) (emphasis in original). When considering an injunction that applies to an agency action under an authorized hazardous fuel reduction project, the Court must balance the "short- and long-term effects of undertaking the agency action against the short- and long-term effects of not undertaking the agency action." 16 U.S.C. § 6516(c)(3).

Plaintiffs maintain that a preliminary injunction would prevent undermining NEPA's purpose and exposing grizzly bears and Plaintiffs' interests to irreparable harm. (Doc. 8 at 35). Moreover, Plaintiffs contend that a preliminary injunction does not harm Defendants as it "merely preserve[s] the status quo" until the Court determines the merits of the case. (*Id.*). Defendants argue that maintenance on Roads 2141 and 21415 is a prerequisite to next year's planned timber harvest and "[a]ny delay in the Project leaves the area at risk of high-intensity surface and crown fire, heightened danger to evacuation routes, and increased probability of entrapment and threats to emergency responders." (Doc. 17 at 36). Additionally,

18

delaying the project results in "continuing aquatic resource impacts," which will cause environmental harm. (*Id.*; Doc. 27 at 2).

The Burnt Mountain Project was designed to address "the well-documented hazardous fuel conditions in and around Red Lodge." (Doc. 17-7 at 4). Beartooth District Ranger Haas has warned that current vegetation conditions mirror the hazardous, high-intensity fuel structures that burned over 10,000 acres in the 2008 Cascade Fire immediately upslope of Red Lodge. (*Id.*). "These conditions create the potential for landscape-scale, high-severity wildfire that could burn into the Red Lodge Mountain Ski Area and the community itself." (*Id.*). Delaying the project: (1) increases susceptibility to insect and disease outbreaks; (2) increases the risk of high-severity fire resulting in long-term ecological damage; (3) increases the risk of high-intensity wildfire adjacent to the at-risk community of Red Lodge; (4) heightens danger to evacuation routes; (5) heightens the probability of human-caused ignitions; and (6) increases the probability of entrapment or threats to emergency responders. (*Id.* at 6–10).

The Court concludes that the balance of equities and public interest tip decisively in Defendants' favor. The evidentiary record demonstrates a negligible likelihood of harm or disruption to grizzly bears resulting from road maintenance. Conversely, the risks and hardships imposed by delaying road maintenance in the short-term and thus indefinitely delaying the Burnt Mountain Project are

19

substantial. The immediate risks associated with inaction outweigh the relatively minimal or unlikely impacts on Plaintiffs' interests or grizzly bears.

## V.    Conclusion

Plaintiffs have not met their burden of demonstrating that they are subject to irreparable harm if a preliminary injunction is not issued before the Court can resolve the matter on its merits. Additionally, the balance of equities and public interest do not favor injunctive relief. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion is **DENIED**.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 31st day of July, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE

20